Drake, Ch. J.,
delivered the opinion of the court:
To the petition filed in this case the defendants demur. The matters presented are of sufficient magnitude to make it proper to set out in full the material parts of the petition and the exhibits connected therewith, which are as follows:
“The petition of John P. South worth, a citizen of the United States, residing at New Orleans, in the State of Louisiana, respectfully showeth:
“That in and during the year 1876 he was circuit court commissioner for the district of Louisiana, duly appointed and acting as such.
“That during the time aforesaid complaints were duly made to your petitioner, as such circuit court commissioner for said district of Louisiana, as required by law, against certain persons thereiu named, charging them with having violated section 5512 of chap. 7 of Title Crimes of the Eevised Statutes of the United States, which provides for the punishment of fraudulent registration of voters, &c., said offense being by said section made a crime, and punishable, as provided in section 5511 of said chapter, by ‘ a fine of not more than five hundred *280 dollars or by imprisonment of not more than three years, or by both.’
“That on such complaint being made as aforesaid, your petitioner, as such commissioner, duly issued warrants against the persons named in said complaints and therein charged with said offenses, which said warrants were, in all respects, in due form of law, and were duly issued by your petitioner as such commissioner, and by him delivered to the marshal of said district.
“That the number of complaints made to your petitioner as such commissioner, and the number of persons therein complained of, and the number of warrants issued as aforesaid on said complaints against said persons therein named, were eight thousand two hundred and eighty-three.
“ That the complaints in each of the above cases were in the form as set forth in Exhibit A, hereto annexed; and the warrants issued thereon were in the form as appears by Exhibit B, hereto annexed; which said exhibits are made a part of this petition.
“Your petitioner further shows that each of said warrants were duly returned by the said marshal or his deputies, with their doings indorsed thereon; that thirteen hundred and eighty of the persons named in said warrants were duly arrested ; seventy-seven were examined and held for trial: six thousand nine hundred and three were not found; and thirteen hundred and three were examined and discharged.
“That in each of said cases a docket entry was kept by your petitioner, as such commissioner aforesaid, of all proceedings had herein, as required by law, which said docket contained an had entry in each case of the title of the case, viz: The United States v. each defendant, naming him; the drawing of the affidavit or complaint, and the date of the same; the issuing the warrant and its date; the return of the officer; the arrest and examination of the person charged in each case where the arrest was made; the number of oaths administered and affidavits filed; the hearing on examinations, and all proceedings, including all services incident to the arrest and examination.
“Your petitioner further says that as such commissioner he kept full and correct files in each case of all papers therein, including affidavits, warrants, and all papers incident to the arrest and examination of the person or persons charged with said offense.
“Your petitioner further shows that on the-day of April, 1877, he forwarded his account for such service, duly verified by his oath, to the district attorney of the said district of Louisiana, as required by law, who thereupon submitted the same in open court for the said district of Louisiana, and the said court did pass upon the same, by approving the said account to the amount of the fees charged for services in all cases wherein the persons arrested had been held for trial, and by *281 disapproving and disallowing and refusing to certify the same, as required by law in all the other cases.
“Your petitioner further shows that thereafter, and on the day of , 3877, he duly caused to be presented to the proper accounting officer of the Treasury Department of the United States his said account for settlement, and that such accounting officer refused and still refuses to allow said account, or to pay the same, except as to the accounts for the seventy-seven cases aforesaid, which were approved by the court, and were allowed and paid by the Treasury Department; as will more fully appear in the correspondence received from said Treasury Department;
# # * # • # # #
“ Wherefore your petitioner prays judgment for the said sum of eighty-two thousand eight hundred and thirty dollars, together with costs.
“ Exhibit A.
• “UNITED STATES oe AMERICA.
“District oe Louisiana,

u Parish of Orleans:

“-,-, having been duly sworn, each for himself, on oath says, that he is a citizen of the State of Louisiana, residing in and a qualified elector of said parish of Orleans, duly registered, and that his name appears as a registered elector or voter upon the registration books of said parish for the year 1876; and they further say, each for himself, that they have made due and diligent personal inquiry for-, registered upon the registration books of the -ward of the city of New Orleans, No.-, and claiming to reside at No. •---street,in said ward and city; and that said-does not reside in said - ward or parish of Orleans aforesaid; that therefore said-, on or about the-day of -, 187-, did fraudulently obtain registration as aforesaid in said-ward and parish as stated, as an elector in said ward and parish, contrary to the 21st section of act No. 155 of the. session of 1874, of the general assembly of the State of Louisiana, and contrary to and. in contravention of section 5512 of the Revised Statutes of the United States.
u___^
u____
“Sworn to and subscribed on the-day of--, 1876.
[l. s.] “Jno. P. Southworth,
“ United States Commissioner of the Circuit Court

il.in and for the District of Louisiana.

*282 “Exhibit B.
“UNITED STATES OE AMERICA.
“District oe Louisiana.
“The United States ) “ vs. v “---• ' )
“ The President of the United States of America to the marshal of the district of Louisiana, or either of his lawful deputies, greeting :
“You are hereby commanded to arrest and bring before me the body of-, at my court-room, in the city of New Orleans, then and there to answer to a charge on affidavit on oath made against the said-by-and-- — , registered electors of said parish of Orleans, that he, the said--, on or about the-day of--, 187-, did willfully, unlawfully, and fraudulently obtain registration as an elector of said parish of Orleans, in the--ward thereof, contrary to section 21 of act No. 155 of the session of 1874, of the general assembly of the State of Louisiana, and more particularly in contravention of section 5512 of the Bevised Statutes of the United States-of America.
“And what you do in the premises make due return to me.
“Witness my hand and seal of office in the city of New Orleans, State of Louisiana, this — day of-, 1876.
[l. s.] “Jno. P. South worth,
“ United States Commissioner of the Circuit Court
for the District of Louisiana.”
This petition discloses an extraordinary case.
It alleges that the claimant’s testator, a Circuit Court commissioner for the district of Louisiana, issued in and during the year 1876, eight thousand two hundred and eighty-three warrants against persons charged with having violated section 5512 of the Bevised Statutes, by fraudulently registering as voters in the city of New Orleans.
It does not state within what portion, or between what dates, of that year that great number of warrants was issued. If their issue extended through the 313 week-days of the year, then the daily issue averaged about 26; if through half a year, 52; if through three months, 106; if through two months, 159; and if through one month, 319. Taking any of the periods named,it was certainly a remarkable amount of work; probably the most so ever done by a Circuit Court commissioner in that line.
*283 For 77 of the cases in which those warrants were issued, and wherein the parties were arrested and examined before him, the commissioner was paid at the Treasury; for the remaining-8,206 his executrix asks judgment for $82,060; that is, $10 in each case; though 6,903 of the persons named in the warrants were not found, and 1,303 were examined and discharged. If the law required us to allow him that amount, we would not hesitate to do it, though it be greater than the combined salaries, for one year, of eight Associate Justices of the Supreme Court of the United States, and nearly as much as the salaries-for four years of all the members of this court.
By section 1982 of the Revised Statutes “ commissioners appointed by the circuit courts, with power to arrest, imprison,, and bail offenders * * * are authorized and required, at the expense of the United States to institute prosecutions-against all persons violating any of the provisions of chapter seven of_the Title ‘Crimes,’ and to cause such person to be arrested, and imprisoned or bailed, for trial before the court of' the United States * * * having cognizance of the offense.”
Chapter seven of the Title ‘ Crimes,’ relates to “Crimes against the Elective Franchise and Civil Rights of citizens ”; and it contains section 5512, which provides, inter alia, for the punishment of any one fraudulently registering as a voter. It was under this section that the 8,283 warrants were obtained.
The amount claimed for issuing those warrants and for proceedings thereunder is assumed by the claimant to be justified by section 1986, which reads thus:
“ Sec. 1986. The district attorneys, marshals, their deputies, and the clerks of the courts of the United States and territorial courts shall be paid for their services, in cases under the foregoing provisions, the same fees as are allowed to them for like services in other cases; and where the proceedings are before a commissioner he shall he entitled to a fee of ten dollars for his services in each case, inclusive of all services incident to the arrest and examination.”
The point is, whether under this provision the claimant’s testator became entitled to $10 for each of the warrants he issued. It is contended that when a complaint under oath was made before him, charging a person with having fraudulently registered, and he issued a warrant for the arrest of such person, a “ case ” was made, within the meaning of this section, author *284 izing- liiin to charge the United States $10, whether the person named in the warrant was found or not; or, if found, whether he was committed or discharged. At the argument the contention pro and con was as to whether that made a “case.” We do not stop to consider that matter, for there are other grounds, fundamental in their character, upon which we can more satisfactorily base a conclusion.
We do not suppose it would be questioned by any intelligent legal mind that, to entitle a commissioner to “a fee of $10 for his services in each case,” he must show, as the very cornerstone of the foundation of his right, that the “proceedings’’before him, which he avers made a “case” in which he might demand that fee, were taken by authority of and in conformity to the statute authorizing those “proceedings.” Most manifestly the United States do not, by statute or otherwise, agree to pay any of their officers, legislative, executive, or judicial, a fee for doing an unlawful or unauthorized act. Fees are intended as a compensation to a public servant for the lawful performance of the duties of his office. For anything done by him colore officii, but in fact unlawfully, he can have no right to demand a fee from the government whose authority he has wrongfully attempted to exercise. This, in our opinion, is just what, by the showing of the petition, the claimant’s testator did in the 8,206 cases, for each of which a fee of $10 is now demanded. Quite opportunely we are enabled to show this on demurrer, because the petition, with the exhibits annexed to and made part thereof, puts the whole matter before us in all its essential features.
The “proceeding's” before John P. South worth, as commissioner, appear on their face to have been instituted under section 5512 of the Revised Statutes. The petition avers that the complaint in each of the cases was in the form set forth in Exhibit A, annexed thereto; and that the warrants issued on the complaints were in the form shown in Exhibit B, also thereto annexed.
Section 5512 defines a number of offenses to which we need not refer in this connection. Omitting all of it but what refers to a man’s fraudulently registering as a voter, it reads as follows:
“ Sec.' 5512. If at any registration of voters for an election for Representative * * * in the Congress of the United *285 States, any person fraudulently registers, * * * not having a lawful right so to do, every such person shall be punishable as prescribed in the preceding section.”
It will be at once noticed that, inasmuch as the laws of the United States nowhere provide for a “ registration of voters' for an election for Representative in the Congress of theUnited States,” there could, under that section standing alone, be no possibility of any person fraudulently registering for such an election. Hence, doubtless, the adoption of section 5513, in these words:
“ Sec. 5513. Every registration made under the laws of any State, for any State or other election at which such Representative * * * in Congress may be chosen, shall be deemed to be a registration within the meaning of the preceding section, notwithstanding, such registration is also made for the purposes of any State, Territorial, or municipial election.”
The effect of this was as if section 5512 had been made to read thus:
11 If at any registration of voters made under the laws of any State, for any State or other election at which a Representative in Congress may be chosen, any person fraudulently registers, not having a lawful right so to do, every such person shall be punishable as prescribed in the preceding section.”
Assuming this to be what the two sections, fused, would express, the first inquiry is for the elements of an offense against section 5512. No better method of reaching a satisfactory answer could probably be found, than to see what should appear in an indictment charging a defendant with having fraudulently registered; for the rule laid down by Bishop would not, we suppose, be anywhere disputed, that every individual thing which the law has specified as constituting any part of the foundation for the punishment of a crime, must be set down in allegation in the indictment. (1 Bishop on Crim. Proc., § 86.)
Applying that rule here, we are of the opinion that, under that section, an indictment for fraudulent registration should show the following particulars:
1. That there was a registration of voters;
2. That it was a registration made under the laws of a State;
3. That it was a registration for a State or municipal election ;
4. That the election for which the registration was made was one at which a Representative in Congress might be chosen;
*286 5. That the party caused himself to he registered as a legal voter;
6. That he had not a lawful right to do so;
7. That, not having that lawful right, he nevertheless, with fraudulent intent, had himself registered as a legal voter.
Of these several elements of the offense how much ought to appear in a complaint made before a commissioner accusing a man of fraudulently registering as a voter? In our opinion, the complaint should contain all of them; not necessarily in the order or mode of statement we have used, nor with the minute fullness and technical exactness of an indictment, but with enough fullness and exactness to describe accurately and ■sufficiently every element of the alleged offense.
Applying these views to the form of complaint.annexed to the petition, and averred to be the one used in all the cases .for which Southworth’s executrix now seeks compensation, we are clear in holding that a complaint in the terms of that form did not allege any violation of section 5512 of the Kevised •Statutes, and therefore did not authorize the issue of a warrant for the arrest of the accused. Viewed as a legal document, it ■is more remarkable for its omissions than for its contents. It omits to allege that the registration, at which the accused is supposed to have registered, was a registration made under ■the laws of the State of Louisiana. It omits to allege that it was a registration for a State or other election. It omits to •allege the vital fact, that the registration was for an election ■ at which a Representative in Congress might he chosen; without the existence of which fact section 5512 gave a commissioner not the least power to entertain any such complaint. It omits to allege that the accused himself procured his registration. For aught that appears, his name may have been put on the registration book by another person, without his knowledge; and possibly for the very purpose of afterwards instituting criminal proceedings against him under this law. It omits to allege that he had not a lawful right to register. Ic omits to allege, except argumentatively and inferentially, that he “fraudulently registered.”
With all these matters omitted, what was the complaint ? Simply this: — two men swear, that the accused was registered upon the registration books of a certain ward, claiming to re■side at No.-in--street, in that ward; that they, *287 the swearers, have made “due and diligent personal inquiry” for the accused; that the accused does not reside in that ward; and that therefore the accused, on or about the-day of -did fraudulently obtain registration as aforesaid in said ward.
Extended comment on this production is unnecessary. But it is fit that we should note its defects (in addition to the above mentioned omissions) as a foundation for warrants to arrest, not one, or ten, or fifty, or a hundred, or five hundred, but eight thousand two hundred and eighty-three men, for fraudulent registration as voters.
It fails to aver that at the time when the name of the accused was put on the registration book he did not reside at the place there stated as his residence; but says that he “ does not reside in said-- ward or parish”; that is, does not now, at the time the complaint is sworn to. This does not even distantly tend to prove that, when registered, he did not reside at the place named in the book.
Again: the complainers do not swear that they have knowledge of the fact that he “does not reside in said-ward or parish,” but that “they have made due and diligent personal inquiry forv the accused, and that he does not reside in said ward or parish; the allegation of bis non-residence there being, presumably, the result of that inquiry. When or of whom they inquired does not appear. Where they pursued their inquiry is equally unstated; when of all things it might be expected that they would have inquired at the house indicated on the registration boohs. But as that would have required a visit to thousands of houses, the shorter way was to make personal inquiry, each complainer of the other perhaps, or of casual passers-by, or of the city directory, and decide for themselves that, in law, that “personal inquiry” was “due and diligent.”
But we need not pursue this matter further. The complaint, as the initiative of a criminal prosecution, which might result in fine and imprisonment of the accused, is conspicuously destitute of validity or vitality, and could not possibly justify the issue of a warrant of arrest. And yet upon just such complaints the claimant alleges that her testator issued 8,283 warrants for the arrest of that number-of men, each to answer the grave charge of having “ willfully, unlawfully, and fraudulently obtained registration as an elector of said parish of Orleans, in *288 the-ward thereof, * * * in cóntravention of section 5512 of the Revised Statutes of the United States of America.” The issue of those warrants was, in our unhesitating opinion, an entirely unlawful act on the part of the claimant’s testator, upon which no claim on the government can be based; and therefore, the demurrer to the petition is sustained.
Nott, J., did not sit at the hearing of the argument on this demurrer, and took no part in the decision of the question.